HABERBUSH, LLP
Vanessa M. Haberbush, Esq., SBN 287044
Lane K. Bogard, Esq., SBN 306972
Alexander H. Haberbush, Esq., SBN 330368
444 West Ocean Blvd., Suite 1400
Long Beach, California 90802
Telephone: (562) 435-3456
Facsimile: (562) 435-6335
Email: ahaberbush@lbinsolvency.com

ATTORNEYS FOR PLAINTIFF
EMILY WOLFE

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

EMILY WOLFE, and individual,

Plaintiff,

v.

DEAN C. LOGAN. Recorder-Registrar/County Clerk for Los Angeles County; HILDA L. SOLIS, HOLLY J. MITCHELL, SHEILA KUEHL, JANICE HAHN, and KATHRYN BARGERTHE, members of the Board of Supervisors for the County of Los Angeles; and SHIRLEY WEBER, the California Secretary of State,

Defendants,

CASE NO. 2:22-cv-06463 JLS (PDx)

Assigned to Dis. Ct.
Judge Josephine L. Staton

**REPLY TO DEFENDANT COUNTY OF LOS ANGELES' OPPOSITION TO PLAINTIFF EMILY WOLFE'S EMERGENCY MOTION AND MOTION FOR PRELIMINARY INJUNCTION**

[*Request for Judicial Notice in Support of the Reply is filed separately and concurrently herewith*]

**Hearing Date**
Date: January 6, 2023
Time: 10:30 a.m.
Courtroom: 8A
First Street U.S. Courthouse
350 West 1st St.
Los Angeles, CA 90012
Judge: Josephine L. Staton



HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

# Table of Contents

**Page No.**

REPLY . . . . . 1

I. FACTUAL BACKGROUND . . . . . 1

II. LEGAL ARGUMENT . . . . . 2

A. Standard for a Preliminary Injunction. . . . . . 2

B. The Motion Does not Seek to Remedy Past Harm but Future Harm. . . 2

C. Wolfe is Likely to Succeed on the Merits. . . . . . 5

1. The Burden Imposed Upon Wolfe's Free Exercise, Free Speech, Voting Rights, and Free Association is Severe and Separate from Other Considerations. . . . . . 5

a. The Mandate Severely Burdens Wolfe's Free Exercise Rights. . . . . . 6

b. The Mandate Severely Burdens Wolfe's Free Speech and Voting Rights. . . . . . 6

c. The Mandate Severely Burdens Wolfe's Freedom of Association. . . . . . 8

2. Where Multiple Important Rights are Burdened, Heightened Scrutiny Must be Applied. . . . . . 9

3. Strict Scrutiny is the Correct Standard for this Court to Apply with Respect to the Free Exercise, Free Speech, Voter Rights, and Free Association Claims. . . . . . 10

a. The Mandate is Not Neutral. . . . . . 11

b. Regardless of Whether Vaccination is "Inherently" Expressive, the Mandate Compels Speech such that Strict Scrutiny is Required. . . . . . 12

c. Polling Places are Limited Public Forums, but the Mandate is Unconstitutional Even if They are Treated as Nonpublic Forums. . . . . . 14

d. Even if the Mandate is "Neutral" and "Generally Applicable," Strict Scrutiny Applies Because Wolfe's Free Speech, Free Exercise, Free Association, and Voter Rights Work in Tandem. . . . . . 16

4. Even if Rational Basis Scrutiny is Used, there is no Rational Basis for the Mandate, and Therefore it Cannot Outweigh Wolfe's Interests. 16

a. County Defendants Provide No Evidence that Supports a Rational Relationship Between the Mandate and the

Legitimate State Interest. . . . . . . . . . . . . . . . . . . . . . . . . . 16

b. Even if the State's Interest in the Mandate is Compelling, it Does Not Outweigh Wolfe's Interest in the Exercise of Multiple Important Rights. . . . . . . . . . . . . . . . . . . . . . . . . 18

c. The Mandate is Not Tailored in Any Way. . . . . . . . . . . . 19

5. County Defendants' Challenges to Each of the Claims for Relief Fails. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

a. County Defendants' Actions Violated Wolfe's Right of Privacy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

b. County Defendants' Actions Violated the Civil Rights Act21

c. County Defendants' Actions Violated the California Voter's Rights Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

d. County Defendants' Actions Violated Wolfe's Voting Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

D. The Balance of Hardships Favors Wolfe and Granting the Motion Advances the Public Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

E. County Defendants Have Failed to Establish A Bond is Required or Necessary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25


HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

# Table of Authorities

**Cases** **Page No.**

*Barahona-Gomez v. Reno*, 167 F.3d 1228 (9th Cir. 1999). . . . . 24

*Burson v. Freeman*, 504 U.S. 191 (1992). . . . . 7, 15

*Common Cause v. Bd. of Supervisors*, 49 Cal. 3d 432 (1989). . . . . 22

*Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173 (9th Cir. 2021). . . . . 17

*Does v. Mills*, 16 F.4th 20 (1st Cir. 2021). . . . . 17

*Earth Island Institute v. U.S. Forest Service*, 351 F.3d 1291 (9th Cir. 2003). . . . . 2

*Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872 (1990). . . . 9, 10, 16

*Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449 (2007). . . . . 14

*Foothill Church v. Watanabe*, 3 F.4th 1201 (9th Cir. 2021). . . . . 19, 20

*Foothill Church v. Watanabe*, No. 215CV02165KJMEFB, 2022 WL 3684900 (E.D. Cal. Aug. 25, 2022). . . . . 20

*Hamamoto v. Ige*, 881 F.3d 719 (9th Cir. 2018). . . . . 3

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448 (2018). . . . . 6

*Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022) . . . . . 9, 10, 16

*Kingdomware Techs., Inc. v. United States*, 579 U.S. 162 (2016). . . . . 3, 4

*Love v. State Dep't of Educ.*, 29 Cal. App. 5th 980 (2018). . . . . 20, 21

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) . . . . . 11, 12

*Minnesota Majority v. Mansky*, 708 F.3d 1051 (8th Cir. 2013) . . . . . 14

*Minnesota Voters All. v. Walz*, 492 F. Supp. 3d 822 (D. Minn. 2020). . . . . 13-15

*Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449 (1958). . . . . 8

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983). . . . . 7, 15

*Pilz v. Inslee*, No. 3:21-CV-05735-BJR, 2022 WL 1719172 (W.D. Wash. May 27, 2022). . . . . 17

*Porter v. Jones*, 319 F.3d 483 (9th Cir. 2003). . . . . 3

*Reynolds v. Sims*, 377 U.S. 533 (1964). . . . . 7



F:\H.A\clients\ACTIVE\Wolfe - 1542\Pleadings\Motion for Preliminary Injunction\9.28.2022\Drafts\REPLY.COUNTY.DS.OPP.MTN.TRO.12-23-22..vmh.wpd THIS DOCUMENT PREPARED ON RECYCLED PAPER

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781 (1988). . . . . . . 14

*Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020). . . . . . . . . . 16, 18

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47 (2006). . . . . . . 12, 13

*Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990). . . . . . . . . . . . . . . 8, 11, 12

*Spencer v. Kemna*, 523 U.S. 1 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 101 S. Ct. 1425, 67 L. Ed. 2d 624 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*We The Patriots U.S., Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021). . . . . . . . . . . . . . 17

*Wesberry v. Sanders*, 376 U.S. 1 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624 (1943). . . . . . . . . . . . . . . . . . . 18

**Statutes**

42 U.S.C. § 2000. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

California Elections Code § 12300. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

California Elections Code § 319.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

California Health and Safety Code § 120440. . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

## REPLY

**TO THE COURT, ALL DEFENDANTS, AND ALL INTERESTED PARTIES:**

Emily Wolfe, plaintiff and movant herein ("Plaintiff" and/or "Wolfe"), hereby replies to the Defendant County of Los Angeles' Opposition to Plaintiff Emily Wolfe's Motion for Preliminary Injunction [docket number 33] (the "Opposition").[1] Because Defendants Dean Logan, the Recorder-Registrar/County Clerk for Los Angeles County (the "Registrar"), Hilda L. Solis, Holly J. Mitchell, Sheila Kuehl, Janice Hahn,[2] and Kathryn Barger, the Board of Supervisors for the County of Los Angeles (collectively, the "Board") (the Registrar and Board collectively, "County Defendants") have failed to show why the relief should not be granted, this Court should grant the Motion.

## I. FACTUAL BACKGROUND

Though the factual record appears to be undisputed, Wolfe wishes to clarify that County Defendants, by requiring her to upload proof of vaccination against COVID-19 prior to working as a poll worker, compel both (1) vaccination itself, *and* (2) an attestation of vaccination status as conditions of employment. Memorandum of Points and Authorities in Support of Motion (the "Memorandum") at page 2, line 7. Moreover, this requirement was imposed on *both* the June primary of 2022 and the November general election of 2022. Memorandum at page 2, lines 4-6. Further, it is undisputed that vaccination against COVID-19 undisputably is a political issue, although people may and do have different reasons for refusing to obtain the Vaccine. *See* Opposition at page 22, line 24 through 23, line 2.

---

[1] Unless otherwise defined, all terms used herein shall have the meanings as those set forth in Plaintiff's Motion for Preliminary Injunction [docket number 25] and supporting Memorandum of Points and Authorities [docket number 27].

[2] Wolfe notes that the Opposition fails to indicate that Janice Hahn is represented. *See* Opposition at page 1. Wolfe assumes that this is an oversight and presumes that Janice Hahn also opposes the Motion since the same firm that represents the remainder of the County Defendants also filed a motion to dismiss on her behalf.



F:\H.A\clients\ACTIVE\Wolfe - 1542\Pleadings\Motion for Preliminary Injunction\9.28.2022\Drafts\REPLY.COUNTY.DS.OPP.MTN.TRO.12-23-22..vmh.wpd THIS DOCUMENT PREPARED ON RECYCLED PAPER

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

## II. LEGAL ARGUMENT

### A. Standard for a Preliminary Injunction.

As discussed in the Memorandum and undisputed by County Defendants, the preliminary injunction standard involves an inquiry of four criteria discussed in the Memorandum. *See* Memorandum at page 3, lines 10-12. As discussed below and in the Memorandum, Wolfe has demonstrated all four criteria of the preliminary injunction standard such that the Court should grant the Motion.

### B. The Motion Does not Seek to Remedy Past Harm but Future Harm.

As to the second prong of the preliminary injunction standard of *Earth Island Institute v. U.S. Forest Service*, which requires the "possibility of irreparable injury to plaintiff if preliminary relief is not granted," 351 F.3d 1291, 1297 (9th Cir. 2003), County Defendants assert that the Motion only seeks to remedy past wrongs, but this misunderstands both the relief sought and why Wolfe is seeking relief in this manner. County Defendants indicate that the only harm was related to the elections occurring in 2022 and that any future harm is speculative. Opposition at page 13, lines 8-13, 23-24, page 14, lines 1-12. However, it is evident from the Motion that Wolfe is seeking to prevent the same wrongs from occurring *in the future* (not seeking relief for the past wrongs). Memorandum at page 3, lines 2-4. While the past wrongs are central, this is only because these past wrongs show what Wolfe reasonably expects for these future wrongs. *See id.* at page 1, line 12 to page 3, line 1. As the County Defendants seem to recognize, however, if there is no live controversy, a plaintiff is still entitled to relief if the plaintiff can show that there is a threat that she/he will be wronged in a similar way again. *See* Opposition at page 13, line 14-22. This is precisely what is occurring here.

The County Defendants' arguments in this regard are particularly troubling because there is no dispute that they are responsible for the Mandate and its enforcement. Opposition at page 10, lines 4-7. They argue that Wolfe has not presented any evidence as to future elections, *see* Opposition at page 14, lines 1-12, but this is because, as indicated in the Memorandum, it is impossible due to the nature of elections.

Memorandum at page 2, lines 3-10. Morever, since County Defendants are responsible for the Mandate and its enforcement, they know and are precisely situated to know if the Mandate will be enforced as to each election *far* earlier than anyone else, let alone by Wolfe. By setting these standards and then insinuating that they are ever changing and may not be in effect (which is necessarily their argument by saying the wrong has already occurred and that Wolfe cannot show that it will occur in the future), they are essentially taking the position that they can commit any wrongdoing they may like if it is transient enough, as long as they do not commit to whether they will do it again in the future. Constitutional rights are not treated in this manner. County Defendants could easily say whether they will or will not be applying the Mandate as to poll workers in the future, yet refuse to do so, likely for the sole purpose of trying to evade review.

The United States Supreme Court expressly allows a court to review a controversy that is "'capable of repetition, yet evading review.'" *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). This exception applies "where (1) 'the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration,' and (2) 'there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Id.* (quoting *Spencer*, 523 U.S. at 17).

> "For a controversy to be 'too short to be fully litigated prior to cessation or expiration,' it must be of 'inherently limited duration.'" *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836 (9th Cir. 2014) (quoting *Doe v. Reed*, 697 F.3d 1235, 1240 (9th Cir. 2012)). That is, the controversy "will only ever present a live action until a particular date, after which the alleged injury will either cease or no longer be redressible." *Id.* The "limited duration of [the] controvers[y] [must be] clear at the action's inception." *Id.*

*Hamamoto v. Ige*, 881 F.3d 719, 722 (9th Cir. 2018). This exception is often applicable to cases involving controversies with elections. *See*, *e.g.*, *Porter v. Jones*, 319 F.3d 483,

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

490 (9th Cir. 2003) ("Election cases often fall within this exception, because the inherently brief duration of an election is almost invariably too short to enable full litigation on the merits").

Here, it is evident that Wolfe's injury is precisely the type of injury to which the *Kingdomware Techs* exception applies. Because it is evident that COVID-19 still exists and the type of Mandate present in the past elections can and likely will be imposed for future elections, it is precisely the type of harm that would otherwise evade review. In fact, this has already occurred: while the Mandate was originally in effect for the June 2022 primary, Wolfe did not file suit until she learned that the same requirement would be imposed *again* in November, 2022. Memorandum at page 2, line 5. Whether the Mandate would be present for the November 2022 election was not even known by Wolfe until September 2022. Declaration of Wolfe, attached to the Memorandum at page 28, lines 16-19. Morever, because elections are, by their nature, of brief duration, the Mandate will be in effect for any particular election for only an extremely brief period. This is inherent from the moment the Mandate (or something similar) is in effect for any given election. Consequently, it is clear that the constitutionality of the Mandate as to elections is of too short a duration for each election to be fully litigated prior to cessation or expiration.

Because of the nature of the Mandate and elections, Wolfe can and has shown that she is likely to suffer an immediate threat of irreparable injury.

As shown by the Los Angeles County Registrar-Recorder/County-Clerk's website,[3] there are several elections in 2023, as shown by the 2023 election schedule,[4] which is attached to the separately-filed Request for Judicial Notice in Support of the Reply at

[3] This website is located at: https://www.lavote.gov/home/voting-elections/current-elections/upcoming-elections.

[4] This can be found at : https://www.lavote.gov/docs/rrcc/Election-Info/scheduled_elections_2023.pdf?v=13.

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

Exhibit "A." The first of these is on January 31, 2023, with elections occurring thereafter in March, April, June and November. This shows that there is an immediate threat of irreparable injury and it should not be delayed review.

Further, as demonstrated by the Los Angeles County Registrar-Recorder/County-Clerk's website (and as demonstrated by the County Defendants' own evidence), the Mandate is *still* in effect, such that the Mandate continues to impact Wolfe's ability to serve in any of the elections currently scheduled.

This is abundantly clear given that the Court's calendar is often full and takes many months before matters can be heard. Because the Mandate appears to still be in effect for the elections that are upcoming for January, and presumably March and April, there is simply not be enough time to obtain the relief Wolfe needs by that election so that Wolfe will be irreparably harmed unless a preliminary injunction is issued now. This election schedule shows precisely why elections present a risk of harm of the type that makes this relief is necessary at this time. Waiting for the next election simply means that there can and will be no correction to unlawful conduct.

This is precisely the type of irreparable injury that needs preliminary relief such that this Court should grant the Motion.

**C. <u>Wolfe is Likely to Succeed on the Merits.</u>**

The bulk of the issues raised in the Motion relate to whether Wolfe is likely to succeed on the merits, which is the first criterion for a preliminary injunction. Because County Defendants raise identical issues with respect to many of the rights at issue, specifically the burdens on Wolfe's right, the standard of scrutiny, and applying the standard of scrutiny, Wolfe discusses them together.

**1. The Burden Imposed Upon Wolfe's Free Exercise, Free Speech, Voting Rights, and Free Association is Severe and Separate from Other Considerations.**

Throughout their Opposition, County Defendants equivocate on the severity of the burden imposed on Wolfe's rights and the appropriate standard of scrutiny, following the

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

apparent line of reasoning that, because its requirements are "neutral and generally applicable," the burden on Wolfe's rights is not severe. That the Mandate is neither neutral nor generally applicable is discussed hereinbelow. However, this consideration is separate and apart from the burden imposed on Wolfe's rights.

a. The Mandate Severely Burdens Wolfe's Free Exercise Rights.

Wolfe objects to vaccination against COVID-19 as a matter of religious conscience. Memorandum at page 2, lines 25-26. Conditioning participation as a poll worker on vaccination necessarily burdens that religious practice. *See Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 708, 101 S. Ct. 1425, 1427, 67 L. Ed. 2d 624 (1981) (finding that a person "may not be compelled to choose between the exercise of a First Amendment right and participation in an otherwise available public program"). In an employment context, this compulsion is especially egregious since it puts substantial pressure on Wolfe to modify her behavior by violating her beliefs.

b. The Mandate Severely Burdens Wolfe's Free Speech and Voting Rights.

The burden this Mandate also imposes on Wolfe's free speech rights is substantial. As noted in Wolfe's Memorandum, vaccination has become a highly partisan issue, with vaccination status (and lack thereof) serving as a litmus test of orthodoxly in various political groups. Memorandum at page 5, line 26 to page 6, line 4. County Defendants then compound this by compelling an attestation of vaccination status. The Court has repeatedly recognized that speech thus compelled, especially when in violation of one's convictions, does substantial damage and requires a showing of "immediate and urgent grounds." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2464 (2018). ("When speech is compelled, however, additional damage is done. In that situation, individuals are coerced into betraying their convictions. Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning, and for this reason ... 'involuntary affirmation' of objected-to beliefs [requires] 'even more immediate and urgent grounds' than a law demanding silence'"). By compelling

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

Wolfe to not only receive the Vaccine but then attest that she has received it in order to become a poll worker, this compelled speech is particular damaging, especially where the County Defendants have shown no immediate or urgent grounds for the Mandate. *See* Opposition. Moreover, County Defendants do not appear to dispute Wolfe's claims about the partisan character of this requirement, and only assert that the vaccination, as such, is not expressive conduct.

The context makes this compulsion all the more egregious, especially in light of California's laws against electioneering. COVID-19 requirements, especially those relating to vaccination, were pivotal issues in both the June and November 2022 election.[5] Strikingly, the County Defendants do not even deny that this is a political issue. *See* Opposition. Compelling an expression from every single poll worker firmly rooted on one side of this partisan issue is tantamount to government advocacy of that position. This is precisely the sort of undue influence Cal. Elec. Code § 319.5(a)-(b) is intended to protect against and exactly the sort of harm the Court has repeatedly warned against. *See Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45, 103 S. Ct. 948, 955, 74 L. Ed. 2d 794 (1983); *Reynolds v. Sims*, 377 U.S. 533, 555 (1964); *Burson v. Freeman*, 504 U.S. 191, 193-94 (1992) (recognizing the compelling interest in "protecting voters from confusion and undue influence"). In compelling speech on a partisan issue at the polling place, the Mandate makes clear to the voting public that views opposing COVID-19 vaccination are unwelcome. Such direct and obvious viewpoint endorsements have the predictable result of influencing both voter turnout and the vote itself. The fact that Wolfe voted despite this intimidation does not overcome this reality. Similarly, while Wolfe may not know who voted for which candidates, she

---

[5] George Brumfiel, Vaccines Use to be Apolitical. Now They're a Campaign Issue, NPR, https://www.npr.org/sections/health-shots/2022/11/02/1133097215/vaccines-election-campaign-midterms (last accessed December 23, 2022).

certainly knew which policies those conducting the election endorsed. Partisan influence and disparities in representation among poll workers is already a matter of national attention and allegations of bias and electoral irregularity in the conduct of elections are commonplace.[6] The Mandate needlessly further stokes this fire. This demonstrates a severe burden on Wolfe's freedom of speech and voting rights.

c. <u>The Mandate Severely Burdens Wolfe's Freedom of Association.</u>

Similarly, the burden on Wolfe's associational rights is severe. Here, County Defendants misstate the law. In their Opposition, County Defendants claim that association rights are violated only if Wolfe's participation as a poll worker is conditioned on her affiliation with a specific political party. Opposition at page 22, lines 16-17. However, this misstates the holding in the case cited. While *Rutan* recognized that such conditions are *an* impermissible infringement on associational rights, there is no suggestion that this is the *only possible* infringement on such rights. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 69 (1990). The case says nothing to restrict free association claims to discrimination against specific political parties. Rather, the Court has found the violation of associational rights for a variety of "groups engaged in advocacy." *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958). Wolfe is a member of groups engaged in advocacy against mandatory COVID-19 vaccination. Memorandum at page 14, lines 12-13. As noted in Wolfe's Memorandum, laws "discouraging free political expression by public employees" were sufficient to show a violation of free association rights. *Rutan*, 497 U.S. at 73-74.

---

[6] Caitlin Sievers, Republicans Angry over Ratio of Republican to Democrat Poll Workers in Maricopa County Primary, https://www.tucsonsentinel.com/local/report/092022_poll_worker_ratio/republicans-angry-over-ratio-republican-democrat-poll-workers-maricopa-county-primary/and (last accessed December 23, 2022).





HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

However, the Mandate goes a step further still by encouraging only one kind of political expression. Wolfe does not wish express her political views in the poling place, contrary to County Defendants' supposition. Opposition at page 23, lines 9-10. Rather, Wolfe wishes to *refrain* from making any political speech, as she would be compelled to do to serve as a poll worker by attesting that she has obtained the Vaccine (or, conversely that she has not and why she has not). This imposes a substantial burden on Wolfe's right to free association.

**2. Where Multiple Important Rights are Burdened, Heightened Scrutiny Must be Applied.**

The impositions the Mandate places on the exercise of Wolfe's rights are severe and cross-cutting. This is particularly relevant in light of the "hybrid" or "tandem" rights analysis of *Smith* and *Kennedy*. *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022); *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872 (1990). In their Opposition, County Defendants falsely assert that double protection of hybrid-rights is contingent on the applicable standard of scrutiny, arguing that it does not apply where both protected rights are subject to rational basis review. Opposition at page 21, lines 13-14. However, this notion is found nowhere in the text of any case recognizing hybrid-rights, is logically self-defeating, and is at odds with County Defendants' own words with respect to when such rights attach.

First, County Defendants' assertion that the violation of two constitutional rights that would, independently, be subject only to rational basis review is and always must be insufficient to warrant heightened scrutiny is absurd on its face – if one of the claims, independently, is already subject to strict scrutiny, what, precisely, is being heightened? In fact, the only case cited by County Defendants dealt with a situation where the standard of review for one or the other right, on its own, was uncertain or tended toward rational basis and this case was decided pre-*Kennedy*. Opposition at page 21, line 26 to page 22, line 9. In *Kennedy,* it is not at all clear that the fact that the targeting of "at least in part" an employee's actions due to their religious character was, of itself, sufficient to

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802


F:\H.A\clients\ACTIVE\Wolfe - 1542\Pleadings\Motion for Preliminary Injunction\9.28.2022\Drafts\REPLY.COUNTY.DS.OPP.MTN.TRO.12-23-22..vmh.wpd THIS DOCUMENT PREPARED ON RECYCLED PAPER

justify strict scrutiny. *See Kennedy*, 142 S. Ct. 2407. In fact, the Court suggests just the opposite by noting that Kennedy's free exercise rights *work in tandem* with his free speech rights. *Id.* County Defendants note that the Ninth Circuit has, in past years, been reluctant to apply the hybrid-rights standard. Opposition at page 22, lines 4-9. While this was true in the past, again, County Defendants' sole citation is a case from 2008 – over a decade before *Kennedy* substantially strengthened, and in fact adopted, the doctrine. *Kennedy* has simply changed the legal landscape and makes it evident that hybrid-rights analysis does apply. The fact that there are not more cases on this issue, as asserted by County Defendants, Opposition at page 22, lines 2-4, is due to the recentness of the *Kennedy* decision.

County Defendants rightly observe that *Smith* "does not mean... that all cases alleging violations of two constitutional rights are subject to 'double protection' or heightened scrutiny, but only that a generally applicable law could fall where it has a serious impact on another constitutional right." Opposition at page 21, line 26 through page 22, line 1. This stands in naked contradiction to their claim that the standards of scrutiny for the respective underlying rights is dispositive. Rather, the standard is just that: whether other important constitutional rights are seriously impacted. Here, Wolfe's rights to free exercise, free speech, voting rights, *and* free association rights are all severely curtailed. Therefore, irrespective of the appropriate standard for review for each particular violation, heightened scrutiny is certainly appropriate when considering even any two of them in tandem – to say nothing of considering them all. This is precisely the type of situation where hybrid-rights applies to create a heightened level of scrutiny.

**3. Strict Scrutiny is the Correct Standard for this Court to Apply with Respect to the Free Exercise, Free Speech, Voter Rights, and Free Association Claims.**

If the Mandate is subject to strict scrutiny as to any one of Wolfe's rights, it is sufficient to overcome the Mandate. The Opposition does not seem to deny this, *see* Opposition, and Wolfe has shown how the Mandate fails to satisfy it in the Motion.

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

Memorandum at page 7, line 1 to page 8, line 3, page 12, line 3 to page 13, line 1. Instead, County Defendants rely on their argument that rational basis scrutiny applies, and their grounds for doing so, both in the speech and free exercise contexts, is that the law is "neutral" and "generally applicable," and therefore the burdens it imposes are "incidental." Opposition at page 14, line 27 through page 15, line 1. However, this is not the case (and merges both the analysis of whether the law is neutral and generally applicable with the burdens it imposes, which are different), and instead, the legal standards show that strict scrutiny applies.

a. The Mandate is Not Neutral.

Despite repeatedly insisting that the law is neutral and generally applicable, County Defendants offer a mere single sentence in support of this claim: "it applies to all County community election workers regardless of their reason for refusal." Opposition at page 20, lines 13-14. While this speaks to the law's general applicability, it is wholly inadequate to show the Mandate's neutrality.[7] Applying this principle to any number of cases demonstrates its absurdity. For example, in *Rutan*, the governor's requirement that all new state employees be Republicans certainly applied to everyone, regardless of their reason for refusal. 497 U.S. 62, 62 (1990). It was still patently discriminatory. *Id*. In *McIntyre*, Ohio's prohibition against the distribution of anonymous campaign literature *also* applied to everyone – regardless of which side that literature promoted. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 334 (1995). This too was still a clear violation of free speech rights, which receive "exacting scrutiny," *especially* when they relate to "core political speech," and *especially* when in the context of an election. *Id.* The mere fact that someone could have a variety of reasons for not wanting to be vaccinated does not

---

[7] Indeed, County Defendants double down on this error several more times, confusing its general applicability for its neutrality. For example, "Plaintiff challenges the County's ***neutral*** Policy requiring proof of vaccination for ***all*** community election workers." Opposition at page 11, lines 2-3 (emphasis original).

change this – just as there are a variety of reasons to distribute campaign literature anonymously or a variety of reasons to register as a Republican.

The Mandate at issue here, like the restrictions in *Rutan* and *McIntyre*, is far from neutral, as it compels the expression of matters of political substance and heated political disagreement that stand in opposition to Wolfe's sincerely-held religious beliefs. Moreover, as County Defendants repeatedly acknowledge, a law must be *both* generally applicable *and* neutral for rational basis review to apply. Opposition at page 20, line 13. Yet, County Defendants have not said a word to suggest the Mandate was neutral. Instead, County Defendants seem to admit that it is not neutral by making no challenge to Wolfe's statements that Vaccination and attesting one's Vaccination status is political speech. *See* Opposition. For these reasons, the Mandate is not neutral.

b. Regardless of Whether Vaccination is "Inherently" Expressive, the Mandate Compels Speech such that Strict Scrutiny is Required.

County Defendants also try to treat Wolfe's free speech claims as "expressive conduct" claims to ratchet the standard down to rational basis review. However, in cases relating to expressive conduct, County Defendants acknowledge that a law may be subject to strict scrutiny even if it is neutral and generally applicable, where the conduct prohibited (or compelled) is "inherently" expressive. Opposition at page 15, lines 1-4. In such cases, County Defendants argue, the standard of scrutiny hinges on the *Rumsfeld* standard of whether the conduct compelled is "inherently" expressive or expressive "because of the speech that accompanied that conduct." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc*., 547 U.S. 47, 49 (2006). In arguing that the attestation of receiving the Vaccine falls into the latter category, County Defendants cite a number of cases, *none* of which has anything to do with vaccinations of any kind nor are they even within this jurisdiction. Opposition at page 15, lines 11 through 24. In fact, County Defendants' own statements show that all of these cases are about whether *masking* is inherently expressive. *See id.* If vaccination is analogous to masking, County Defendants have not

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802



F:\H.A\clients\ACTIVE\Wolfe - 1542\Pleadings\Motion for Preliminary Injunction\9.28.2022\Drafts\REPLY.COUNTY.DS.OPP.MTN.TRO.12-23-22..vmh.wpd THIS DOCUMENT PREPARED ON RECYCLED PAPER

said why.[8]

However, the question of whether vaccination is "inherently expressive" is ultimately academic because County Defendants' Mandate compels Wolfe *both* to be vaccinated *and* to attest to her vaccination status. Indeed, Defendants are not merely compelling conduct (whether inherently expressive or not), but compelling the accompanying speech. Even non-expressive conduct certainly becomes expressive when someone is forced to talk about it. *Rumsfeld* and all other cases that entertain the "inherently expressive" vs. "accompanying speech" dichotomy take for granted that the speech accompanying such conduct is voluntary. *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 48 (2006). The suggestion that expressive conduct is somehow *less* expressive (or subject to a lower standard) when someone is forced to speak about it is found nowhere in the case law and defies credulity. In fact, this demonstrates precisely how non-analogous masking is to vaccination, since masks are visible and require no attestation. Whether vaccination constitutes expressive conduct, inherently or otherwise, is therefore entirely beside the point, since speech itself is being compelled.

County Defendants imply that, because the policy is not *aimed at* the communication of vaccination status, the compelled attestation ought to be ignored entirely and only the expressive conduct of being vaccinated/unvaccinated should be

---

8 Additionally, Defendants' own authority, *Minnesota Voters All. v. Walz*, 492 F. Supp. 3d 822, 837–38 (D. Minn. 2020), is actually clear that whether or not expression is "inherent" is not dispositive on the issue of expressive conduct's protection, but merely strong evidence. *Id.*; *see* Opposition at page 15, lines 11 through 24. Here, because there are no exemptions of *any kind* from the Mandate, no explanation is necessary – an observer could reasonably assume that any poll worker is aligned religiously and/or politically with a pro-COVID-19 vaccination viewpoint, or at minimum, aligned religiously and/or politically in such a way that would not be opposed to obtaining the Vaccine.

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802



F:\H.A\clients\ACTIVE\Wolfe - 1542\Pleadings\Motion for Preliminary Injunction\9.28.2022\Drafts\REPLY.COUNTY.DS.OPP.MTN.TRO.12-23-22..vmh.wpd THIS DOCUMENT PREPARED ON RECYCLED PAPER

considered. Opposition at page 16, lines 1-2. However, County Defendants cite no authority for ignoring outright the expression of speech that is plainly and admittedly compelled, and doing so cuts against the Court's history on compelled speech cases and common sense. *See*, *e.g.*, *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc*., 487 U.S. 781, 782 (1988). Similarly, County Defendants raise the fact that the Mandate only compels "a 'yes' or 'no.'" Opposition at page 16, lines 12-13. It is not clear why County Defendants believe the quantity of speech that is compelled has any effect at all on the applicable standard of scrutiny because it does not. *See id.* (recognizing that strict scrutiny applies to compulsions of "factual" speech).

Moreover, the restriction on speech is of a political character, as addressed hereinabove, and therefore more suspect than content-neutral speech would be. *See Fed. Election Comm'n v. Wisconsin Right To Life, Inc*., 551 U.S. 449, 457 (2007). Significantly, County Defendants do not appear to dispute that the speech compelled by the Mandate is of a political character (only whether vaccination, itself, is *inherently* so). Opposition at page 15, lines 1-4. This is compounded still further by the fact that this speech takes place within the context of a polling place – which are supposed to be free from this sort of partisan influence. *See* Opposition at page 17, lines 12-22 (commenting on electioneering).

By compelling political speech that is inherently expressive, strict scrutiny applies.

c. Polling Places are Limited Public Forums, but the Mandate is Unconstitutional Even if They are Treated as Nonpublic Forums.

County Defendants cite *Minnesota Majority v. Mansky* for the proposition that polling places are non-public forums. Opposition at page 16, lines 19-20. However, that same case recognizes that even courts within the same circuit (which is not controlling precedent in this case) treat polling places as designated public forums in many instances. *Minnesota Majority v. Mansky*, 708 F.3d 1051, 1057 (8th Cir. 2013). The Supreme Court of the United States has also recognized polling places as designated public fora in its

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

most prominent cases on the subject. *See*, *e.g.*, *Burson v. Freeman*, 504 U.S. 191, 193-94 (1992); *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983). Ultimately, the question is irrelevant, however, because, as County Defendants acknowledge, if polling places are public or limited public, the Mandate is subject strict scrutiny. Opposition at page 16, lines 13-26. However, if polling places are non-public, strict scrutiny is all the more appropriate because of the very reason why polling places are regarded as non-public: they are used for holding elections. In the test set forth in *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* (and reiterated in *Mansky*), laws restricting free speech in nonpublic fora are "permissible if [they are] viewpoint neutral and 'reasonable in light of the purpose which the forum at issue serves.'" *Id.* at 1057, *quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46–49 (1983). Specifically,

> The state has a legitimate interest in "maintain[ing] peace, order and decorum" in the polling place. *Mills v. Alabama*, 384 U.S. 214, 218, 86 S. Ct. 1434, 16 L. Ed. 2d 484 (1966). A state also has a compelling interest in "protecting voters from confusion and undue influence" and "preserving the integrity of its election process." *Burson*, 504 U.S. at 199, 112 S. Ct. 1846 (citations and internal quotation marks omitted).

*Minnesota Majority v. Mansky*, 708 F.3d 1051, 1057 (8th Cir. 2013). In other words, only when and to what extent a polling place's restrictions on free speech are consistent with the foregoing ends is that polling place regarded as non-public. If vaccination (and attestation of the same) is truly neutral and generally applicable, as County Defendants claim, they necessarily fall outside of the purposes of maintaining peace and order or protecting voters from confusion or undue influence such that the speech required by the Mandate may not be compelled in light of the purpose for which the polling place is considered nonpublic. There is simply no basis for demanding the speech. If, however, as Wolfe contends, the Mandate compels the expression of a highly partisan viewpoint, this demonstrates all the more reason why the Mandate fails the *Perry* test because the

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802


F:\H.A\clients\ACTIVE\Wolfe - 1542\Pleadings\Motion for Preliminary Injunction\9.28.2022\Drafts\REPLY.COUNTY.DS.OPP.MTN.TRO.12-23-22..vmh.wpd THIS DOCUMENT PREPARED ON RECYCLED PAPER

compelled expression of highly partisan viewpoints falls well outside the purpose which the forum at issue serves. Either way the speech is seen, any restriction is simply inappropriate.

d. Even if the Mandate is "Neutral" and "Generally Applicable," Strict Scrutiny Applies Because Wolfe's Free Speech, Free Exercise, Free Association, and Voter Rights Work in Tandem.

Even if the Court finds that the Mandate is "neutral and generally applicable," strict scrutiny nevertheless applies. As discussed hereinabove, when additional important constitutional rights are abridged, the standard the government must meet ratchets up to strict scrutiny. *Kennedy*, 142 S. Ct. at 2421; *Smith*, 494 U.S. at 881–82 (citations omitted). Therefore, the Mandate should be subjected to strict scrutiny; under such scrutiny, there is no dispute that it fails.

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

**4. Even if Rational Basis Scrutiny is Used, there is no Rational Basis for the Mandate, and Therefore it Cannot Outweigh Wolfe's Interests.**

Even if this Court applies rational basis review to some or all of the claims Wolfe brings, County Defendants cannot meet rational basis scrutiny since they have not provided any reason their Mandate is rationally related to a legitimate state interest.

a. County Defendants Provide No Evidence that Supports a Rational Relationship Between the Mandate and the Legitimate State Interest.

Taken in the light most favorable to County Defendants, both the authority and evidence presented by County Defendants support only the notion that stemming the spread of COVID-19 is a compelling interest. They do not show that the Mandate was rationally related to that end. Opposition at page 18, lines 1-2. County Defendants also misstate the cases they cite on this point. The holding in *Roman Cath. Diocese of Brooklyn v. Cuomo*, while it did recognize a state interest in stemming COVID-19, found *against* a restriction on the number of people gathering in various places and found the



F:\H.A\clients\ACTIVE\Wolfe - 1542\Pleadings\Motion for Preliminary Injunction\9.28.2022\Drafts\REPLY.COUNTY.DS.OPP.MTN.TRO.12-23-22..vmh.wpd THIS DOCUMENT PREPARED ON RECYCLED PAPER

restriction to be not neutral. 141 S. Ct. 63, 67 (2020). Another of County Defendants' cases, *Pilz v. Inslee,* which found that reducing the spread of COVID-19 was a "legitimate" state interest and upheld it on that basis, dealt with a generalized employer vaccine mandate for which free exercise claims were the sole constitutional issue. *Pilz v. Inslee*, No. 3:21-CV-05735-BJR, 2022 WL 1719172, at *5 (W.D. Wash. May 27, 2022). The same is also true of County Defendants' remaining "rational basis" cases, all of which also dealt with policies where employers allowed exemptions, whether by reason of medical disability, religion, or both, but otherwise had a general vaccine requirement for all individuals. *See Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177-81 (9th Cir. 2021); *Does v. Mills*, 16 F.4th 20 (1st Cir. 2021); *We The Patriots U.S., Inc. v. Hochul*, 17 F.4th 266, 282 (2d Cir. 2021). None of these cases dealt with situations either where more than one constitutional right was implicated or in circumstances where, as in polling places, the volatility of and harm imposed by compelled political expression is heightened.

More significantly, each of these cases occurred in a context where vaccination could be shown to bear at least *some* relationship to a health outcome. Ordinary employment and educational contexts have nowhere near the vast disparity in numbers between members of the public (for whom vaccination is not and cannot be required) and employee/staff subject to a vaccination mandate. In the employment or school context, if all members are required to be vaccinated, there will be little or no interaction with those who are not vaccinated. Elections are very different. Poll workers number only a handful in each location, while there may be thousands of voters who pass through and are in close contact with poll workers on a given day. Voters cannot be subject to a vaccination requirement, such that the vast majority of those who come into the polling place will be under no mandate and may or may not be vaccinated. All of these people are just as much at risk for contracting and being hospitalized or dying from COVID-19 as if there were no Mandate for poll workers in place. In fact, they may be more at risk. According to Exhibit "C" and Exhibit "D" of County Defendants' (1) Request for

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802



F:\H.A\clients\ACTIVE\Wolfe - 1542\Pleadings\Motion for Preliminary Injunction\9.28.2022\Drafts\REPLY.COUNTY.DS.OPP.MTN.TRO.12-23-22..vmh.wpd THIS DOCUMENT PREPARED ON RECYCLED PAPER

Judicial Notice in Support of Opposition to Plaintiff's Motion for Preliminary Injunction; and (2) Declaration of Zachary J. Golda in Support Thereof ("County Defendants' RJN"), the Vaccine is "effective at protecting people from getting seriously ill, being hospitalized, and dying." Exhibit D to County Defendants' RJN. Nothing in any of County Defendants' evidence suggests the Vaccine is effective at either at (A) preventing someone from contracting COVID-19, or (B) decreasing the transmissibility of COVID-19. *See* Exhibits C and D to County Defendants' RJN. Thus, vaccinated persons are no less likely to spread COVID-19 to the unvaccinated population despite being more likely to feel well enough to report to work. Even if not a greater risk, vaccination of poll workers certainly does nothing to protect the vast majority (in excess of 95%) of people who enter and leave a polling place. Thus, there is no rational relationship between the Mandate and the purported interest in public health.

County Defendants have failed to show any relationship between the Mandate or the government interest at stake. Morever, they have failed to show that they, or anyone else, made any rational decision based on that relationship. *See* Opposition. By failing to demonstrate how or why the Mandate has a rational relationship to the interest of public health, the Mandate fails rational basis scrutiny.

b. <u>Even if the State's Interest in the Mandate is Compelling, it Does Not Outweigh Wolfe's Interest in the Exercise of Multiple Important Rights.</u>

As discussed hereinabove, multiple of Wolfe's most fundamental rights are severely burdened and harmed by the Mandate. Even where free exercise rights alone have been implicated, those rights have outweighed a proven "compelling" interest in public health such that the restrictions based on public health were ruled unconstitutional. *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020). The free speech rights – especially in conjunction with the burden the Mandate imposes on the electoral process and Wolfe's right to free association – are no less significant. *West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624, 642 (1943) ("[i]f there is any fixed star in

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein"). Therefore, whatever interest the state has in promoting public health is outweighed by Wolfe's interest in freely exercising her rights.

c. The Mandate is Not Tailored in Any Way.

County Defendants admit that the Mandate is not tailored to protect the speech, religion, association, or voter rights of those who object, but claim that "doing so is not administratively feasible." Opposition at page 18, line 17. The only justification for this is "resource constraints" and "the ephemeral nature of the community election worker position." Opposition at page 18, lines 18-19. However, there is no reason providing exemptions should cost additional resources –someone already has to review the proof of vaccination. Reviewing requests for exemptions is no more onerous. If there is some reason to believe that it is more onerous, County Defendants have not stated it. Similarly, there is no reason why "the ephemeral nature" of the position has any affect at all on the reasonableness of exemptions – if anything, it suggests that the administrative cost of reviewing vaccination records is overly burdensome. Thus, while the interest County Defendants seek to advance may be legitimate, the Mandate is not at all tailored to that end.

To support this further, County Defendants make the assertion that "a law is more likely to be discriminatory against religion where it *provides* exemptions." Opposition at page 19 (emphasis original). In support of this concept, County Defendants cite only to *Foothill Church v. Watanabe*, 3 F.4th 1201, 1205 (9th Cir. 2021).[9] Opposition at page

---

[9] The opinion in *Foothill Church v. Watanabe*, 3 F.4th 1201 (9th Cir. 2021) only vacated the lower court's ruling and remanded the case. County Defendants cite to the dissenting opinion without indicating that it is a dissent. Consequently, Wolfe cites to the opinion of the lower court after remand.



F:\H.A\clients\ACTIVE\Wolfe - 1542\Pleadings\Motion for Preliminary Injunction\9.28.2022\Drafts\REPLY.COUNTY.DS.OPP.MTN.TRO.12-23-22..vmh.wpd THIS DOCUMENT PREPARED ON RECYCLED PAPER

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

19, line 8-12. However, *Foothill*(after remand) merely stands for the proposition that exemptions need to be applied equally to all religions; it says nothing about the likelihood of discrimination based on their availability or nonavailability. *Foothill Church v. Watanabe*, No. 215CV02165KJMEFB, 2022 WL 3684900, at *10 (E.D. Cal. Aug. 25, 2022). It seems that County Defendants, while recognizing there are religious and other reasons not to obtain the Vaccine, instead believe that discriminating against everyone equally somehow cleanses the Mandate of any constitutional wrongdoing by making the law "neutral." As explained above, this is simply not the case and the Mandate is not neutral, regardless of the exemptions allowed. *Id*. This further shows that County Defendants have, rather than tailoring the Mandate to allow for exemptions, simply failed to tailor the Mandate in any way that would be required to satisfy even rational basis review.

Therefore, because County Defendants have no justification for how the Mandate serves any governmental interest, the Mandate fails even rational basis scrutiny.

**5. County Defendants' Challenges to Each of the Claims for Relief Fails.**

Because Wolfe has addressed each of the claims for relief in the Memorandum detailed many her responses to County Defendants' Opposition above, Wolfe only addresses each claim for relief (and does not address some at all since they are already addressed sufficiently above) insofar as there are specific additional arguments of the County Defendants to raise.

a. <u>County Defendants' Actions Violated Wolfe's Right of Privacy.</u>

While County Defendants are correct that a law that relates to public health has a presumption of constitutional validity for purposes of whether Wolfe's right to privacy (not the other constitutional rights) is violated, Opposition at page 23, line 5, Wolfe has rebutted that presumption. The presumption of constitutional validity identified in *Love v. State Department of Health*, however, only restates that the rational basis review

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802



F:\H.A\clients\ACTIVE\Wolfe - 1542\Pleadings\Motion for Preliminary Injunction\9.28.2022\Drafts\REPLY.COUNTY.DS.OPP.MTN.TRO.12-23-22..vmh.wpd THIS DOCUMENT PREPARED ON RECYCLED PAPER

standard applies to cases where states have validly asserted "important interests in safeguarding health" and the challenged law is rationally related to that end. *Love v. State Dep't of Educ.*, 29 Cal. App. 5th 980, 993 (2018). However, here, as discussed hereinabove, County Defendants cannot show that the Mandate is rationally related to that end. Accordingly, Wolfe is likely to succeed on her claim for violation of her right to privacy under the California Constitution.

While mandatory vaccinations are often upheld in relation to privacy claims, this occurs in the contexts indicated above, such as schools or other arenas where the vaccination requirement has some logical connection to public health (such as vaccinating all school students), which is not the case here. Further, California Health and Safety Code § 120440 is regarding disclosure of vaccination information by various health care providers to health departments and specific government agencies, but it does not have any indication that it relates, in any way, to requiring individuals to be vaccinated.

Further, in analyzing all of the elements for the right to privacy, County Defendants again confuse actually obtaining the Vaccine with being compelled to make a statement regarding it. This distinction makes clear that, for the reasons set forth in the Memorandum, Wolfe can show that her rights to privacy have been violated, especially given the current controversies surrounding the Vaccine in some groups of which Wolfe is a part. For these reasons, Wolfe can show that she is likely to succeed on her right to privacy claims.

b. <u>County Defendants' Actions Violated the Civil Rights Act.</u>

County Defendants assert that, under the Civil Rights Act,[10] Wolfe must first exhaust her administrative remedies before can bring suit under 42 U.S.C. § 2000-e-

---

[10] Wolfe notes that County Defendants are correct that Wolfe inadvertently referred to Title VII of the Civil Rights Act of 1965 as Title VI. This was a scrivener's error, and all citations in the Motion and Memorandum to Title VI should be to Title VII.

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

2(a)(1); *see also* 42 U.S.C. § 2000d. Opposition at page 29, line 10. However, because of the ephemeral nature of poll workers, there is no administrative remedy or ability to seek these remedies. Moreover, because Wolfe is merely seeking injunctive relief, seeking administrative relief is unnecessary.

c. County Defendants' Actions Violated the California Voter's Rights Act.

While County Defendants assert that there is discretion over who is hired as a poll worker, they provide no authority for how they can then create additional requirements that are inherently discriminatory to certain individuals. Opposition at page 30, line 10-17. There is simply no justification for creating additional requirements to be a poll worker, let alone discriminatory ones.

Further, while County Defendants claim there is no private right of action to bring a claim under California Elections Code § 12300, the ordinary standing rules apply; because Wolfe has been harmed, she may bring a private claim for it. *See Common Cause v. Bd. of Supervisors*, 49 Cal. 3d 432, 439 (1989) (noting that no special showing of statutory standing is required under the California Elections Code where "the question is one of public right and the object... is to procure the enforcement of a public duty"). The California Elections Code sections cited by County Defendants that create various private rights of action *create* standing when there would ordinarily be no standing without these enactments. *See* Opposition at page 30, line 18-28. Rather, "[i]n the absence of either an express limitation on citizen standing or any indication of legislative intent to confer exclusive powers," such limitations on standing should not be imposed. *Common Cause*, 49 Cal. 3d at 439. Because Wolfe has standing, she may bring a claim for relief.

d. County Defendants' Actions Violated Wolfe's Voting Rights.

County Defendants have no authority to support their position that the manner in which the Mandate burdens the right to vote is insufficient to render it invalid. *See* Opposition at page 31, line 11 to page 32, line 8. Their blithe characterization of the

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

burden it imposes as "[s]ubjective discomfort" also misses the gravity of the situation. Opposition at page 32, lines 6-7. The right to vote is foundational to our republic and must be protected. *See Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). County Defendants do not dispute the importance of the right to vote. However, by conditioning who can administer our electoral process on both religious and political grounds, the right to vote is significantly harmed. The inherent dangers of undue influence and voter intimidation resulting in exclusion from the electoral process are addressed at greater length hereinabove, and they impose a great deal of harm both on Wolfe and on the elections themselves . "Subjective discomfort" affects people's decisions every day – it is utterly inappropriate to knowingly introduce factors that will make voters uncomfortable, especially when those factors align with one side in a hotly-contested political issue. In conjunction with the other rights at issue, this burden violates Wolfe's right to vote.

### D. **The Balance of Hardships Favors Wolfe and Granting the Motion Advances the Public Interest.**

County Defendants claim that their goal is to administer policies evenhandedly and that an injunction would single out Wolfe for a special benefit not available to anyone else, Opposition at page 33, line 3-16, but this simply means that County Defendants seek to violate everyone's constitutional rights equally. This is not permitted. If the Mandate is unconstitutional as to Wolfe, it is unconstitutional as to everyone similarly situated. Further, the only way to administer policies evenhandedly is to protect the constitutional rights of *all* those who wish to be poll workers. County Defendants admit that they would prefer to exclude those who do not receive the Vaccine. Given the rights at stake, the harm to the voting process, and the public interest in fair elections, both of these criteria support granting the Motion.

### E. **County Defendants Have Failed to Establish A Bond is Required or Necessary.**

County Defendants request that the Court require Wolfe to post an appropriate bond on the basis that the public interest factor weighs against Wolfe and that Wolfe has

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

not shown that she would be unable to litigate her claims if a bond in any substantial amount is issued. Opposition at page 33, line 26 to page 24, line 10. County Defendants clearly misunderstand Wolfe's position and ignore applicable law.

First, as discussed in detail above, the public interest is at stake because if the Mandate is found unconstitutional, it is unconstitutional as to everyone similarly situated, not just Wolfe. Therefore, the fact that the Mandate has the potential to affect the constitutional rights of any resident in California who may seek to be a poll worker demonstrates that the public interest factor weighs in favor of Wolfe.

Second, even if this Court finds that Wolfe did not make a showing that she could not afford to pay a bond and litigate her claims, the Court should still decline to order Wolfe pay a bond because County Defendants did not make a showing of why its costs or damages would be substantial, necessitating a bond. The Ninth Circuit has held that even if a plaintiff does not provide evidence of the inability to pay a bond and litigate the claims, if the defendants do not present evidence of their costs and damages, the Court may properly exercise discretion and deny a bond and/or issue a nominal bond. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999), *supplemented,* 236 F.3d 1115 (9th Cir. 2001).

Because County Defendants have not presented evidence of the costs and/or damages that may be incurred in this case and the case is clearly one that involves the public interest, the Court should decline to order a bond and/or only order Wolfe to pay a nominal bond. Further, because Wolfe is a private citizen attempting to protect the rights of all California residents, a bond is similarly inappropriate. Finally, to the extent the Court is inclined to grant the Motion but require a bond, Wolfe respectfully requests additional time to present evidence of ability to post a bond once the Court gives a better idea of the bond required. Without knowing County Defendants' costs, Wolfe simply cannot present evidence to this issue at this time.

For these reasons, a bond should not be required.

///

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

## III. CONCLUSION

For the foregoing reasons, Wolfe respectfully requests that the Court grant the Motion as to the County Defendants and for any other such relief as is just and proper.

Respectfully submitted,
HABERBUSH, LLP

Dated: December 23, 2022 By: /s/ Alexander H. Haberbush

ALEXANDER H. HABERBUSH, ESQ.,
Attorneys for Plaintiff

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

## CERTIFICATE OF SERVICE

I hereby certify that on **December 23, 2022**, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court Central District of California by using the CM/ECF system.

I further certify that parties of record in this action who either are registered CM/ECF users, or who have registered for electronic notice, or who have consented in writing to electronic service, will be served through the CM/ECF system.

I further certify that some of the parties of record to this action have not consented to electronic service. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days, to the following parties:

| **December 23, 2022** | **Alexander S. Bostic** | /s/ Alexander S. Bostic |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |